**MOORMAN, Plaintiff, v. NATIONAL CASUALTY CO., Defendant.**

Municipal Court, City of Dayton, (Civil Division).

No. 80337. Decided June 27, 1946.

Herbert M. Eikenbary, Dayton, attorney for plaintiff.
Estabrook, Finn & McKee, Dayton, attorneys for defendant.

## OPINION

By McBRIDE, J.

This action was instituted by Eugenia Moorman as beneficiary under the terms of an accident policy on the life of Bettyanne Raimey, plaintiff's daughter, who was shot and killed on May 8, 1945 by one Ben Gary who was subsequently tried by a jury in the Common Pleas Court of Montgomery County and found guilty of manslaughter. The policy in question provides that in the event of the death of the insured by accidental means the Company will pay the sum of $300.00. The policy also contains a provision for a double indemnity as a result of which plaintiff requests judgment in the amount of $600.00.

For its Statement of Defense the defendant, National Casualty Company relies upon a provision of the policy which is as follows:

"No indemnity shall be paid in the event of death, disability, injury or loss, if **intentionally** inflicted upon the insured by himself or any other person (assault by highwayman or burglar excepted)."

The defendant admits that Ben Gary was found guilty of manslaughter and maintains that the bullet wounds were **intentionally** inflicted upon the decedent.

By agreement of counsel the only question before the Court is the effect of this provision in the insurance contract removing liability in the event of death intentionally inflicted upon the insured by himself or any other person. The facts of the case indicate that the provision for assault by highwayman or burglar have no application.

Counsel have agreed that the only question is whether the bullet which caused insured's death was intentionally inflicted; that since the man who inflicted the wounds is imprisoned, his testimony and that of one Jeanette Woods, who witnessed the shooting, should be received and read by this Court from the transcript of testimony taken in the Common Pleas Court and that this and no other testimony would be offered in the case.

The case was then submitted and briefs furnished by both parties. The plaintiff's opening brief argued that the jury found Ben Gary guilty of manslaughter and that manslaughter is the unlawful or unintentional killing of another. In reply, the defendant argued (1) that while manslaughter may be an unintentional killing it is not necessarily so and (2) also that the conviction of Ben Gary, the assailant, is irrelevant and not res adjudicata in this civil action to recover on the policy upon the insured's life. While the fact that the jury's verdict was manslaughter is admitted by the pleadings, the Court agrees that it is not bound by that decision in this case and is free to examine the testimony presented to determine the nature of the act complained of and whether or not it was intentionally inflicted.

In determining this question the verdict of the jury in the criminal case is not conclusive on the beneficiary of the insurance policy.

"The fact that the intoxicated person who shot and killed the insured subsequently entered a plea of guilty to a charge of first-degree murder in a prosecution by the State could in no wise be said to be conclusive on the beneficiary on the issue involved, e. g., as to whether or not the act of the person in shooting the insured was intentional or unintentional." Zimmerman v Southern Surety Company, 241 S. W. 95, cited in 56 A. L. R., 687.

And it is the opinion of the Court that this is equally true even though the accused were tried and found guilty in a les-

ser degree which does not require proof of the existence of an intent to kill. It is a general rule that judgments are not conclusive where the parties sue or are sued in different capacities and certainly this is true where the plaintiff, as in this case, was not and could not have been a party to a prosecution by the State.

The provision of the policy exempting the insurer from liability is pleaded as a defense and consequently since the accidental nature of the insured's death is admitted, the burden of proof is upon the defendant to establish by a preponderance of the evidence that the injury which caused the death of the insured was intentionally inflicted by another. Numerous cases will be found on this point in 56 A. L. R., 698. The presumption (though not conclusive) is that injuries, although inflicted on the insured by another, were not intentional. Alson v Southern Surety Company (1926) 201 Iowa 1334, 208 NW 213.

The testimony submitted in this case very clearly shows that Ben Gary and the decedent had been drinking continuously on VE Day for a period of several hours. The liquor consisted of double shots of whiskey and beer. Even after starting home, the couple stopped at another place for still more whiskey. The testimony of Gary contains several express denials of any intentional injury and his reactions to the crime clearly reveal that he was in a mental stupor brought on by intoxication. And he was apparently in very little better condition when he surrendered to the police shortly after the incident. His testimony supports a finding that he was in no condition to form an intent to kill. And the statements of the only witness, Jeanette Woods, relate principally to the physicial facts of the incident and throw little light on the question at issue in this case. In other words, the existence of an intentional injury is not sustained by the weight of the evidence.

It is the finding of the Court that Ben Gary was intoxicated to such a degree that he did not know or realize the nature and extent of his act; that the death of the insured was unintentional and did not result from an act "intentionally inflicted" upon the insured as provided in the policy. The authorities on this point are cited in 56 A. L. R. 686, et seq.

An entry may be drawn accordingly in favor of the Plaintiff and against the Defendant in the amount prayed for in the Statement of Claim.